## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

|  |  |  |
|---|---|---|
| DANNY L. ABBOTT, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 15-211 L |
| | ) | |
| v. | ) | Filed: September 28, 2022 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

## OPINION AND ORDER

Plaintiffs in this rails-to-trails action own land adjacent to the former rail line of the Missouri Central Railroad Company ("MCRR"). They allege the federal government's conversion of the rail line to a public recreational trail constituted a taking of their reversionary interest in the land underlying the line. Over 200 individual claims are at issue in the parties' summary judgment motions now before the Court. This opinion primarily resolves questions of liability based on the interpretation of deeds. For the reasons below, Plaintiffs' Motion for Partial Summary Judgment and Defendant's Cross-Motion for Partial Summary Judgment are each **GRANTED in part** and **DENIED in part**.

### I.  BACKGROUND

#### A.    Factual Background

##### 1.    The National Trails System Act; Rails-to-Trails Takings Claims

The Interstate Commerce Act of 1887 and the Transportation Act of 1920 grant the Surface Transportation Board ("STB") (initially the Interstate Commerce Commission ("ICC")) exclusive authority over the construction, operation, and abandonment of railroad lines throughout the country. *See Burnett v. United States*, 139 Fed. Cl. 797, 801 (2018) (citing *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321 (1981)). While railroads played a major role in

the nation's development in the 19th and early 20th centuries, the importance of such rail lines to the nation's economy waned over time. "By 1990, the nation's interstate railway system had shrunk from its peak of 272,000 miles of track in 1920 to about 141,000 miles of track, and railroads continue abandoning track each year." *Barclay v. United States*, 443 F.3d 1368, 1370–71 (Fed. Cir. 2006) (citing *Preseault v. Interstate Com. Comm'n* ("*Preseault I*"), 494 U.S. 1, 5 (1990)). Concerned about the permanent loss of railroad track, Congress enacted legislation in 1976, commonly referred to as the Trails Act, to promote the conversion of abandoned rail lines to recreational and/or conservational uses. *See Preseault I*, 494 U.S. at 5–6. Amendments to the Trails Act in 1983 authorized the ICC, and now the STB, "to preserve for possible future railroad use rights-of-way not currently in service and to allow interim use of the land as recreational trails." *Id.* at 6; *see Burnett*, 139 Fed. Cl. at 801 (citing *Caldwell v. United States*, 391 F.3d 1226, 1229 (2004)). This process is known as "railbanking." *Caldwell*, 391 F.3d at 1229.

"In order for a rail line to be 'railbanked,' the railroad company must first file an abandonment application under 49 U.S.C. § 10903, or a notice of exemption from that process under 49 U.S.C. § 10502." *Burnett*, 139 Fed. Cl. at 802. "In cases involving the exemption procedure, . . . the STB issues a Notice of Interim Trail Use or Abandonment ('NITU'), which also preserves the STB's jurisdiction over the rail corridor, allows the railroad to discontinue operations and remove track and equipment, and affords the railroad and the trail provider 180 days to negotiate a railbanking and interim Trails Act Agreement." *Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708, 712 (2011) (citing *Caldwell*, 391 F.3d at 1229–30).[1] "If the parties reach an agreement, and duly notify the [STB], the right-of-way remains under [STB] jurisdiction

---

[1] Trail use is considered "interim" and rail lines considered "railbanked" because, in theory, use of the line as a railroad may be reinstated at some point in the future. *See Caquelin v. United States*, 959 F.3d 1360, 1363 (Fed. Cir. 2020).

indefinitely while used as a recreational trail, and state law may not treat that 'interim use . . . as an abandonment of the use of such rights-of-way for railroad purposes.'" *Caquelin v. United States*, 959 F.3d 1360, 1364 (Fed. Cir. 2020) (alteration in original) (quoting 16 U.S.C. § 1247(d)). Because the NITU automatically authorizes the interim trail use, the trail provider is then authorized to assume management of the former rail line in the absence of further action by the STB; however, "[i]f no agreement is reached, the railroad company may proceed with the abandonment process." *Burnett*, 139 Fed. Cl. at 802 (citing 49 C.F.R. §§ 1152.29(d)(1), (e)(2)).

Conversion of a rail line to a recreational trail may give rise to a Fifth Amendment takings claim by a landowner who holds in fee simple the land over which the rail line runs.  In such circumstance, the landowner's property is taken for public use if: (a) the railroad held an easement that was narrow, *i.e.*, limited to "railroad purposes," or (b) the railroad held an easement broad enough to encompass trail use but abandoned the easement so that the landowner's property interest became disencumbered.  *See Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States* ("*Preseault II*"), 100 F.3d 1525, 1533 (Fed. Cir. 1996)).   Where the railroad had a fee estate in the land under the rail line, however, there is no taking.  *See id.*

### 2.   The Rock Island Line

The basic facts of this case are not in dispute.  The real property at issue is situated along a 144-mile rail line in Cass, Pettis, Benton, Morgan, Miller, Cole, Osage, Maries, Gasconade, and Franklin Counties in Missouri.  *See* Ex. 14 to Pls.' Mot. for Partial Summ. J. ("Pls.' MSJ") at 2, ECF No. 148-15.  Construction on this rail line, commonly known as the Rock Island Line, "generally occurred during the first five years of the 20th century," Ex. 1A to Pls.' MSJ at 17, ECF No. 148-1, and multiple different railroad companies owned the rail line over time, starting with the St. Louis, Kansas City, and Colorado Railroad Company (generally referred to herein as "the

Railroad"), *see* Pls.' MSJ at 12, ECF No. 148; Ex. 22e to Pls.' MSJ at 2, ECF No. 148-31.  With

the exception of an 80-mile stretch between St. Louis and Owensville, the line has not been used

since the early 1980s.  *See* ECF No. 148-31 at 2; ECF No. 148-1 at 6–7; Ex. 22a to Pls.' MSJ at

5–6, ECF No. 148-27; Ex. 22b to Pls.' MSJ at 2, ECF No. 148-28.[2]

    MCRR acquired the line from Union Pacific in 1999.  *See* ECF No. 148-1 at 17–18; ECF

No. 148-31 at 2.  On November 18, 2014, MCRR filed a "Verified Notice of Exemption" with the

STB pursuant to 49 U.S.C. § 10502 and 49 C.F.R. § 1152.50, seeking to abandon its interest in the

Rock Island Line.  Ex. 2 to Pls.' MSJ, ECF No. 148-3.  On December 16, 2014, the Missouri

Department of Natural Resources ("MDNR") filed with the STB a request for the issuance of a

NITU so that MDNR could negotiate with MCRR for acquisition of the rail corridor for trail use

under the Trails Act.  Ex. 5 to Pls.' MSJ, ECF No. 148-6.  The STB issued a NITU on February

25, 2015.  ECF No. 148-15.  The STB granted five subsequent extensions, ultimately extending

the NITU negotiating period to December 31, 2019.  *See* Exs. 15–19 to Pls.' MSJ, ECF Nos. 148-

16–148-20.

    On December 20, 2019, MCRR and MDNR filed with the STB a "Notice of Interim Trail

Use Agreement," advising that the parties executed an agreement on December 17, 2019, and that

a fundraising strategy for conversion of the trail, which would require "substantial financial

resources," was underway.  *See* Ex. 20 to Pls.' MSJ at 3, ECF No. 148-21.  On December 15, 2021,

MCRR and MDNR filed with the STB a "Notice of Property Transfer" indicating that the rail line

had been conveyed from MCRR to MDNR.  Ex. A to Pls.' Second Mot. for Leave to Suppl., ECF

No. 155-1; *see* Ex. A to Pls.' First Mot. for Leave to Suppl., ECF No. 154-1.

---

    [2] Indeed, much of the railroad equipment had already been removed before a more
comprehensive effort at salvage and removal was undertaken in the mid-2010s.  *See, e.g.*, ECF
No. 148 at 16 (photos of vacant rail corridor).  Contractors undertaking more recent salvage and
removal work reported significant overgrowth.  *See* Ex. 22c to Pls.' MSJ at 2–3, ECF No. 148-29.

**B.     Procedural History**

1.     <u>The Instant Action</u>

Plaintiffs filed their complaint on March 2, 2015.  *See* Pls.' Compl., ECF No. 1; *see also* Pls.' Fourth Am. Compl., ECF No. 122 (operative complaint filed January 14, 2021).  This case was consolidated with *Axmark v. United States*, No. 16-1138L, on January 17, 2017, and further consolidated with *Seamon v. United States*, No. 17-1924L, on February 21, 2018.  *See Axmark* Consolidation Order, ECF No. 23; *Seamon* Consolidation Order, ECF No. 40.  Due to a change of counsel, certain plaintiffs and claims were severed from this case on June 12, 2020, under Rule 21 of the Rules of the United States Court of Federal Claims ("RCFC") and have since proceeded in *Alexander v. United States*, No. 15-2111L.  *See Alexander* Severance Order, ECF No. 94.  The parties first filed cross-motions for partial summary judgment in late 2020 and early 2021; however, the Court permitted the parties to file amended motions after the initial briefing revealed, according to Plaintiffs, that Defendant took positions contrary to the parties' stipulations and prior discussions.  Scheduling Order, ECF No. 140; *see* Pls.' Mot. to Vacate Br.'g Schedule & for Leave to Am., ECF No. 137.

Plaintiffs filed their amended Motion for Partial Summary Judgment on August 6, 2021.  ECF No. 148.  Defendant filed its Response and Cross-Motion on September 3, 2021.  Def.'s Resp. in Opp'n to Pls.' MSJ & Cross-Mot. for Partial Summ. J. ("Def.'s MSJ"), ECF No. 149.  Plaintiffs filed their Reply and Response to Defendant's Cross-Motion on October 15, 2021.  Pls.' Resp. in Opp'n to Def.'s MSJ & Reply in Supp. of Pls.' MSJ, ECF No. 152.  Defendant filed its reply on November 12, 2021.  Def.'s Reply in Supp. of MSJ, ECF No. 153.

Plaintiffs organize the claims at issue in their Motion into four categories, or "Tables." Table 1 pertains to the claims of nine landowners whose modern deeds (as opposed to source deeds) state that they own the relevant land in fee simple.  ECF No. 152 at 10–11.  Table 2 includes

17 landowners for whom Plaintiffs assert that the Railroad obtained only an easement over the land, not a fee simple estate. *Id.* at 12–13. As to the 54 landowners listed in Table 3, for whom Defendant does not dispute ownership, Plaintiffs assert that the Railroad's easement was limited to "railroad purposes" and thus not broad enough to encompass trail use. *Id.* at 16–20. Finally, for the 20 landowners' claims in Table 4, Plaintiffs argue that there is no dispute that the Railroad held only an easement "for railroad purposes." *Id.* at 21–22.[3]

Defendant organizes its Motion into various "Attachments." Attachments A and B contain 117 claims for which Defendant asserts that the Railroad owned the land at issue in fee simple. ECF No. 149 at 14–15. Attachments C and D contain 90 claims for which it asserts that the Railroad held an easement broad enough to encompass trail use. *Id.* at 15. And Attachment E contains 39 claims for which Defendant agrees the Railroad held only an easement for railroad purposes but contests that Plaintiffs have established liability "because it is not yet clear whether any taking has occurred (or, even if so, whether that taking is temporary or permanent)." *Id.*

On December 15 and 17, 2021, Plaintiffs requested leave to supplement their Motion with exhibits showing the MDNR had acquired the rail line from MCRR. *See* Pls.' First Mot. for Leave to Suppl., ECF No. 154; ECF No. 154-1 (news articles); Pls.' Second Mot. for Leave to Suppl., ECF No. 155; ECF No. 155-1 (notice advising STB of property transfer from MCRR to MDNR); *see also* Pls.' Reply in Supp. of Mots. for Leave to Suppl., ECF No. 157. Defendant does not oppose Plaintiffs' second motion and concedes liability as to claims in Table 4 and Attachment E is established by this subsequent development. Def.'s Resp. to Pls.' Mots. for Leave to Suppl. at 1–2, ECF No. 156; *see* Oral Arg. Tr. at 53:1–22, ECF No. 161.

---

[3] Plaintiffs added a "Table 2a" to their Response and Reply brief, pertaining to 24 landowners' claims. ECF No. 152 at 13–15. Plaintiffs clarified at oral argument that the Table 2a claims were not part of their Motion and were simply included as a way of organizing their opposition to Defendant's Motion. *See* Oral Arg. Tr. at 95:21–96:20, ECF No. 161.

The Court held oral argument on May 24, 2022.  Following the hearing, the Court issued an order directing the parties to confer and file a joint appendix to their cross-motions, citing the difficulty posed by the parties' differing systems of claims categorization.  Order to File Joint App., ECF No. 159; *see* ECF No. 161 at 107:25–112:9.  In particular, the Court instructed the parties to identify representative deeds that would allow the Court to resolve arguments on large sets of claims by way of an analysis focused on a single deed or smaller group of deeds.  ECF No. 159 at 2.  On June 10, 2022, the parties filed their Joint Appendix and identified representative deeds for each of their categories.  *See* Joint App. to Cross-Mots. for Partial Summ. J. ("Joint App."), ECF No. 162; Ex. A to Joint App., ECF No. 162-1; Pls.' Representative Deeds, ECF No. 162-2; Def.'s Representative Deeds, ECF No. 162-3.

  2. <u>Plaintiffs' Representative Deeds</u>

Plaintiffs identify a total of 10 representative deeds relevant to Tables 2, 2a, and 3.  For claims raised in Table 2 (fee versus easement), Plaintiffs rely on the Armstrong (30-495) ("Armstrong I"), Hoerath (30-506), and Hoecker (18-140) Deeds as representative.[4]  ECF No. 162 at 2.  The Armstrong I and Hoerath Deeds both state consideration in the amount of "one dollar and the building, maintaining, and operating of a Railroad," ECF No. 162-2 at 2; *see id.* at 8, while the Hoecker Deed states consideration of $775, Ex. 24ff to Pls.' MSJ at 2, ECF No. 148-71.  Each deed states that the grantors "grant bargain and sell, convey and confirm" the interest in the relevant land to the Railroad and "its successors and assigns."  ECF No. 162-2 at 2; *see id.* at 8; ECF No. 148-71 at 2.  The Armstrong I Deed also expressly states that the title acquired by the Railroad is a fee simple.  ECF No. 162-2 at 2.  Both the Armstrong I and Hoerath deeds further grant the Railroad an access easement "to encroach upon the adjoining lands" for purposes of

---

  [4] Plaintiffs mistakenly attached the Schweer Deed (54-69) instead of the Hoecker Deed to the Joint Appendix.  *See* ECF No. 162-2 at 10–11.

facilitating construction of the rail line, "so long as the Railroad Company aforesaid may wish to maintain and operate its said Railroad." *Id.*; *see id.* at 9.  In a secondary conveyance, the Hoecker Deed refers to the land granted in the primary conveyance as a "right of way."  ECF No. 148-71 at 2.  Each deed also includes similar "To Have and to Hold" habendum language.  ECF No. 162-2 at 2–3 (conveying land to the Railroad "To Have and to Hold . . . with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in any wise appertaining unto the [Railroad] and unto its successors and assigns forever"); *see id.* at 9; ECF No. 148-71 at 2.

For claims included in Table 2a (fee versus easement), Plaintiffs identify the Greene (15-392), Linke (16-607), Dittman (25-603) ("Dittman I"), Dittman (25-605) ("Dittman II"), and Whitlock (25-636) Deeds as representative.[5]  ECF No. 162 at 2.  These deeds contain substantially similar granting and habendum language as the representative deeds for Table 2.  And the Greene Deed similarly states consideration of "one dollar and the building, maintaining, and operating of a railroad."  ECF No. 162-2 at 16.  However, the Dittman I & II and Whitlock Deeds state valuable consideration in the amounts of $160, $47.50, and $135, respectively.  *Id.* at 21, 24, 27.  These three deeds each include two conveyances: the primary conveyance of the strip of land identified by reference to the center line of the railroad, and a secondary conveyance "for extra right of way" of the land adjacent to "the above described right of way" in the primary conveyance.  *Id.* at 21 (describing the land subject to the two conveyances as "strips for right of way"); *see id.* at 24, 27.

For claims raised in Table 3 (scope of easement), Plaintiffs identify the Simpson (26-605) and Armstrong (53-345) ("Armstrong II") Deeds as representative.  ECF No. 162 at 3.  These deeds also contain substantially similar granting and habendum language as the representative

---

[5] Defendant also identifies the Linke Deed as a representative deed for claims in Attachments C and D.  Because Defendant concedes that the Linke Deed conveys only an easement, the Court will analyze this deed for purposes of the scope-of-easement issue.

deeds for Tables 2 and 2a.  Both deeds state nominal consideration and identify the land conveyed by reference to the location of the rail line as it was to be constructed.  ECF No. 162-2 at 5, 13.

3.      <u>Defendant's Representative Deeds</u>

As to claims listed in Attachments A and B (fee versus easement), Defendant identifies the Bournnert (22-437) and Fitzgerald (30-501) Deeds as representative.  ECF No. 162 at 3.  It claims the Bournnert Deed is "an example of a deed providing material consideration, and fee simple deed language, with any references to a 'right-of-way' being merely descriptive, not limiting, or appearing only in secondary conveyances that do not affect the primary conveyance."  *Id.*  The Bournnert Deed states $425 in consideration and describes the strip of land conveyed as being "parallel with and adjacent to the route and line of the [Railroad], as the same is now surveyed, staked, and located."  ECF No. 162-3 at 5 (including additional references to the "route" or "route and line").

Defendant argues that the Fitzgerald Deed is "an example of a 'one dollar plus' deed, where material non-monetary consideration is included."  ECF No. 162 at 3.  The Fitzgerald Deed states "consideration of one dollar and the building, maintaining, and operating of a Railroad," in exchange for "a strip of land," which the deed subsequently refers to in a secondary conveyance as being "title in fee simple."  ECF No. 162-3 at 7.

For claims listed in Attachments C and D (scope of easement), Defendant claims that the Linke Deed (16-607) is representative of "a broad conveyance that is an easement under Missouri law because of the nominal consideration."  ECF No. 162 at 3.  Like Plaintiffs' representative deeds for Table 3, the Linke Deed states one dollar in consideration and employs "grant, bargain, and sell" language. ECF No. 162-3 at 3.  It also includes—just as Defendant's other representative

deeds include—substantially similar granting and habendum language.[6]  *Id.* at 3–4 (employing the "grant, bargain, and sell, convey and confirm" and "To Have and to hold" language).

4.    Plaintiffs' Arguments

As to claims listed in Table 1, Plaintiffs argue that the claimants' modern deeds by which they acquired their larger property establish either their ownership of the parcels in fee simple and that the Railroad holds only an easement in the relevant land.  ECF No. 148 at 41.  According to Plaintiffs, under Missouri law, "the person holding title pursuant to a recorded deed to real property is presumed to be its owner."  *Id.* at 42 (quoting *Fink v. Wright (In re Wright)*, 611 B.R. 319, 322 (Bankr. W.D. Mo. 2019)).  Therefore, Table 1 claimants' modern deeds are allegedly superior to the Railroad's "ancient" source deeds as an evidentiary matter, and such claimants should be presumed to own the relevant land in fee.  ECF No. 161 at 10:7–12.  Plaintiffs argue that a ruling against the claimants on their takings claim would thus amount to "an extraordinary rewriting of their Missouri deed" by the Court.  *Id.* at 11:17–18.

As to claims listed in Table 2 and Defendant's Attachments A and B, Plaintiffs argue that the Railroad did not acquire an interest in fee simple in the relevant land, but instead acquired only an easement.  ECF No. 148 at 41–46.  Thus, the claimants' interest purportedly became disencumbered upon the cessation of railroads running over the land.  *Id.*  Plaintiffs emphasize that Missouri courts prefer to interpret conveyances to railroad companies as easements, *see id.* at 45 (quoting *Moore v. United States* ("*Dorothy Moore*"), 58 Fed. Cl. 134, 136 (2003)), and as such Missouri courts will find a fee conveyance to a railroad only where there is both valuable

_____

[6] Defendant identifies the Marvin Deed (12-497) as representative of the claims in Attachment E, which it contends "may be helpful to provide a contrast for the deeds associated with Attachments A–D."  ECF No. 162 at 4.  The Court appreciates this deed's inclusion but finds it is unnecessary to describe in this section as Defendant concedes liability as to Attachment E claims.

consideration and language that is unequivocally indicative of a fee simple conveyance, *see* ECF No. 161 at 15:24–16:7, 25:8–13, 29:24–30:2, 94:8–24.  In particular, Plaintiffs assert that deeds that have nominal consideration and/or reference the strip of land conveyed to the Railroad as being a "right of way" carry "a strong presumption of the conveyance of an easement."  ECF No. 148 at 45; *see* ECF No. 152 at 28 (citing *Jordan v. Stallings*, 911 S.W.2d 653, 658 (Mo. Ct. App. 1995)).

Regarding claims listed in Table 3 and Defendant's Attachments C and D, Plaintiffs assert that the easements held by the Railroad cannot be broad enough to encompass trail use because, under Missouri law, an easement granted *to* a railroad is necessarily an easement granted *for* a railroad.  ECF No. 148 at 46.  Plaintiffs argue that the contrary decisions in *Burnett* and *Behrens v. United States*, 154 Fed. Cl. 227, 231–33 (2021), misapplied Missouri law, which as a matter of public policy presumes that easements held by a railroad are limited to "railroad purposes."  ECF No. 148 at 49–54; ECF No. 152 at 30–33.  According to Plaintiffs, this presumption applies even where there is a broad conveyance that would otherwise transfer a fee simple to the Railroad but for the operation of a long-standing Missouri statute.  ECF No. 152 at 32–34.

To the extent that the Railroad's easements are broad enough to encompass trail use, Plaintiffs alternatively argue that such easements were long ago abandoned by the time the NITU issued.  ECF No. 148 at 57–59; ECF No. 152 at 34–39.  According to Plaintiffs, "[i]n Missouri, '[a railroad right-of-way] easement is extinguished when the railroad ceases to run trains over the land.'"  ECF No. 148 at 58 (second alteration in original) (quoting *Schuermann Enters., Inc. v. St. Louis Cnty.*, 436 S.W.2d 666, 668 (Mo. 1969)).  Plaintiffs point to additional evidence of the railroad's abandonment, including, *inter alia*, the Railroad's removal of tracks and ties, the modern deeds subject to Table 1, and reports of grazing cattle over the line.  *Id.* at 57–59; *see* ECF No. 161 at 38:12–20; 87:20–22.

5.   Defendant's Arguments

As to claims listed in Plaintiffs' Table 1, Defendant argues that modern deeds cannot establish the Railroad's title in a takings action; and regardless, Plaintiffs have not met their "burden to show where in the chain of title the railroad relinquished its rights that it purchased in the source deeds."  ECF No. 149 at 30; *see* ECF No. 153 at 8 (claiming that Plaintiffs' argument suggesting the Railroad's property interest changed "is entirely speculative").  Defendant further argues that Plaintiffs' reliance on quitclaim and warranty deeds in the takings context is inapposite and that the burden of proof in Missouri quiet-title actions is likewise inapplicable in the takings context.  ECF No. 153 at 8 (citing *R & R Land Dev., L.L.C. v. Am. Freightways, Inc.*, 389 S.W.3d 234, 242 (Mo. Ct. App. 2012)); *see id.* at 9; ECF No. 161 at 76:17–20 (arguing that a quitclaim or warranty deed "suggests that the modern Plaintiff *thinks* he owns all the way to the centerline" (emphasis added)).  Defendant stresses that rails-to-trails cases are generally decided on source deeds.  *See* ECF No. 161 at 76:7–14, 81:8–9, 100:3–9.

Regarding claims in Attachments A and B and Plaintiffs' Table 2, Defendant emphasizes that deed language in both the granting and habendum clauses indicates a fee simple conveyance to the Railroad.  ECF No. 149 at 26–27 (discussing use of the phrases "grant, bargain, and sell" and "strip of land" in granting language); *see id.* at 29 (discussing "To Have and to Hold" language in habendum clauses).  Defendant disputes that any purportedly nominal consideration or references to "right of way" are sufficient to change the nature of the intended fee estate.  It asserts that a reference to "right of way" may simply be "a description of the location of the land conveyed in the primary conveyance, rather than . . . a limitation on that conveyance," depending on the context of its placement within the deed itself.  *Id.* at 32; *id.* at 21 (citing *Clevenger v. Chi., Milwaukee & St. Paul Ry. Co.*, 210 S.W. 867 (Mo. 1919)) (arguing that the primary conveyance is the only material conveyance for purposes of the takings analysis); ECF No. 153 at 16.  It also

contends that non-monetary consideration, such as the construction of a building, other structure, or a railroad, may be considered "valuable," even where the monetary component of the consideration is nominal.  ECF No. 149 at 28 (citing *Welch Family Ltd. P'ships 7 & 15 v. United States*, No. 15-1104L, slip op. at 8, 13 (Fed. Cl. June 21, 2018)).

With respect to claims in Attachments C and D and Plaintiffs' Table 3, Defendant asserts that the Railroad's easements are broad enough to encompass public recreational trail use and that there is no presumption under Missouri law that easements held by a railroad are necessarily limited to railroad purposes, as explained in the *Burnett* and *Behrens* decisions.  *Id.* at 32–38. According to Defendant, Plaintiffs' arguments on this point are based on generalities instead of the actual applicable source deeds, which clearly indicate an intent to convey a fee simple without expressed limitations on either the use of the land or to whom the Railroad may assign its rights. *Id.* at 36–38; ECF No. 153 at 10–19.

Should the Court find the Railroad's easements broad enough to encompass trail use, Defendant argues that these easements were not abandoned because the Railroad never effectuated abandonment under the mandatory federal procedure.  ECF No. 149 at 43–46; ECF No. 153 at 19–21.  It disputes Plaintiffs' assertion that Missouri law governs abandonment, arguing instead that any aspect of state law that requires or even allows a railroad to abandon a rail line is preempted by federal law.  ECF No. 149 at 47.[7]

---

[7] Defendant further asserts that title and standing defects exist for certain individual plaintiffs.  ECF No. 149 at 38–39; *id.* at 39 (arguing, for example, that Plaintiff Gentet "lacks standing for his claim because he sold this property prior to the NITU" and that a number of claims "do not involve property located adjacent to the portion of the rail line that is covered by the NITU or owned at the appropriate time").  Defendant, however, does not cite to any exhibits or other documents containing such facts, nor did either party address the issue in subsequent filings or at oral argument.  Thus, the Court concludes that it lacks information necessary to rule on the issue at this stage.  Defendant may raise these arguments again in any future summary judgment motion.

## II.  LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  A fact is material when it "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine, thus necessitating a trial, when a finder of fact may resolve factual issues in favor of either party.  *Id.* at 250.

"When deciding a summary judgment motion, all of the nonmovant's evidence is to be credited, and all justifiable inferences are drawn in the nonmovant's favor."  *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 671 (Fed. Cir. 2000) (citing *Anderson*, 477 U.S. at 255); *see Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994).  Summary judgment is not appropriate where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  "With respect to cross-motions for summary judgment, each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered."  *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968–69 (Fed. Cir. 2009) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).  The moving party bears the burden of proving the absence of a genuine dispute of material fact but "may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case."  *Dairyland Power*, 16 F.3d at 1202 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

### B.    "Rails-to-Trails" Takings

In a rails-to-trails case, a Fifth Amendment taking occurs "when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement."  *Ladd v. United States*, 630 F.3d

1015, 1019 (Fed. Cir. 2010) (citing *Ellamae Phillips*, 564 F.3d at 1373). The "threshold question" in these circumstances "is whether the claimant has a compensable property interest in the land allegedly taken, which is often answered by analyzing the original deeds that conveyed the property to the railroad." *Chi. Coating Co., LLC v. United States*, 892 F.3d 1164, 1167 (Fed. Cir. 2018) (citing *Preseault I*, 494 U.S. at 16; *see Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001) ("[O]nly persons with a valid property interest at the time of the taking are entitled to compensation.").

> As explained by the United States Court of Appeals for the Federal Circuit:
>
> [T]he determinative issues for takings liability are (1) who owns the strip of land involved, specifically, whether the railroad acquired only an easement or obtained a fee simple estate; (2) if the railroad acquired only an easement, were the terms of the easement limited to use for railroad purposes, or did they include future use as a public recreational trail (scope of the easement); and (3) even if the grant of the railroad's easement was broad enough to encompass a recreational trail, had this easement terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement (abandonment of the easement).

*Ellamae Phillips*, 564 F.3d at 1373 (citing *Preseault II*, 100 F.3d at 1533). To determine whether the Railroad held the property in fee simple or merely possessed an easement and, if the latter, whether the scope of the easement included trail use, the Court looks to state law, which "creates and defines the scope of the reversionary or other real property interests." *Preseault I*, 494 U.S. at 20 (O'Connor, J., concurring); *see Preseault II*, 100 F.3d at 1540.

Missouri law applies in the instant case because all the relevant property is located in Missouri. Decisions of the Missouri Supreme Court are therefore controlling, but the Court may consider decisions of the Missouri Court of Appeals where the Missouri Supreme Court has not addressed a particular issue. *See, e.g.*, *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005); *Barfield v. Sho-Me Power Elec. Coop.*, 852 F.3d 795, 799 (8th Cir. 2017).

C.      **Missouri Law**

In Missouri, a railroad "may hold, purchase, or convey the fee in land when the acquisition is by general warranty deed without any restriction on the quantum of title conveyed and for a valuable consideration." *Schuermann*, 436 S.W.2d at 668 (citing *Coates & Hopkins Realty Co. v. Kan. City Terminal R.R. Co.*, 43 S.W.2d 817, 822 (Mo. 1931)); *see Nigro v. Ashley*, 690 S.W.2d 410, 415–17 (Mo. Ct. App. 1984) (transfer of interest in "lots, tracts, or parcels of land" for consideration in the range of $320–$1,099.96 amounted to fee simple conveyance).  However, "where the acquisition is for right of way only, whether by condemnation, voluntary grant or conveyance in fee upon a valuable consideration, the railroad takes only an easement over the land and not the fee." *Schuermann*, 436 S.W.2d at 668 (citing *Brown v. Weare*, 152 S.W.2d 649, 652 (Mo. 1941)).

Railroad conveyances in Missouri have been further restricted by law.  As relevant here, a statute in effect at the time of the conveyances at issue provided that a railroad may:

> [T]ake and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroads; but the real estate received by voluntary grant shall be held and used for the purpose of such grant only[.]

MO. REV. STAT. § 1035 (1899) (current version at MO. REV. STAT. § 388.210(2) (2022)).

Under Missouri Supreme Court precedent, "[t]he term 'voluntary' grant has been construed to mean a conveyance without valuable consideration." *Moore v. Mo. Friends of Wabash Trace Nature Trail, Inc.* ("*Danny Moore*"), 991 S.W.2d 681, 685 (Mo. Ct. App. 1999) (citing *Brown*, 152 S.W.2d at 653).  "Missouri courts have recognized that any 'sum of money in excess of one cent, one dime, or one dollar . . . is a valuable consideration within the meaning of the law of conveyancing.'" *Burnett*, 139 Fed. Cl. at 805 (alteration in original) (quoting *Brown*, 152 S.W.2d at 653).  Valuable consideration may also be non-monetary, such as the construction (with

resulting benefits accruing to property owners) of public buildings, military headquarters, manufacturing plants, or other private buildings. *See Bagby v. Mo.-Kan.-Tex. Ry. Co.*, 171 S.W.2d 673, 676 (Mo. 1943).

The exchange of mere nominal consideration, even if paired with unconditional language indicative of a fee simple conveyance, results only in a voluntary grant to the railroad. *See, e.g*, *G.M. Morris Boat Co. v. Bishop*, 631 S.W.2d 84, 88 (Mo. Ct. App. 1982); *Dorothy Moore*, 58 Fed. Cl. at 137. If the conveyance to the railroad is determined to be a voluntary grant, "the effect of the statute [is] that the railroad acquired only an easement, no matter what interest the deed purported to convey." *Danny Moore*, 991 S.W.2d at 685 (citing *G.M. Morris*, 631 S.W.2d at 87). The Missouri Supreme Court in *Brown* recognized that under Missouri law the easement conveyed to a railroad by voluntary grant is limited to railroad purposes. *Brown*, 152 S.W.2d at 653–55 (citing identical provision codified at MO. REV. STAT. § 5128 (1939) and MO. REV. STAT. § 4655 (1929)). Specifically, it held that "[t]he statute makes no distinction according to the exact railroad purpose for which the land is to be used but in effect *requires only that the land be used for railroad purposes*." *Id.* at 654 (emphasis added). Accordingly, the railroad's easement "ceases to exist when the land is no longer used for railroad purposes." *G.M. Morris*, 631 S.W.2d at 87 (citing *Coates*, 43 S.W.2d at 821–22).

When analyzing deed language, "the expression or limitation of the use to which the property is to be put is a decisive factor in determining if [the interest conveyed] is an easement or the grant of a fee." *Id.* at 88 (citing *Quinn v. St. Louis-S.F. Ry. Co.*, 439 S.W.2d 533, 535 (Mo. 1969)). "Generally, the words road or roadway indicates a right of passage and the grantor does not mean to convey a fee simple absolute." *City of Columbia v. Baurichter*, 729 S.W.2d 475, 479 (Mo. Ct. App. 1987) (citing *Franck Bros., Inc. v. Rose*, 301 S.W.2d 806, 811 (Mo. 1957)); *see Hartman v. J & A Dev. Co.*, 672 S.W.2d 364, 365 (Mo. Ct. App. 1984) (citing *Franck Bros.*, 301

S.W.2d at 811) (recognizing that "from a practical standpoint long narrow strips of land serve little or no function other than for roads or rights of way"). This Court has previously observed that "Missouri courts have long favored interpreting grants to railroad companies as easements." *Dorothy Moore*, 58 Fed. Cl. at 136 (collecting cases); *see Miller v. United States*, 67 Fed. Cl. 542, 547 (2005) ("For a deed to convey a fee rather than an easement [to the railroad], the intent must be clear from the language in the deed.").

In sum, Missouri courts will look to three factors to determine whether a deed passes title to a railroad in fee simple or merely grants a railroad an easement: "(1) whether the deed includes language conveying a 'right of way;' (2) the amount of consideration; and (3) language in the deed limiting the use of the land for railroad purposes." *Danny Moore*, 991 S.W.2d at 685–86 (footnote omitted); *see Nigro*, 690 S.W.2d at 417.

## III. DISCUSSION

The Court's analysis addresses the disputed issues ad seriatim. First, the Court finds that disputed issues of fact preclude summary judgment on the modern deeds issue raised by the claims identified in Table 1. Second, the Court finds that the Armstrong I, Hoerath, Hoecker, Greene, Fitzgerald, Dittman I & II, and Whitlock Deeds associated with the deeds listed in Table 2 and 2a/Attachments A and B convey only easements to the Railroad either because they state nominal consideration or refer to the relevant land as "right of way." In contrast, the Bournnert Deed conveys the fee estate to the Railroad. Third, with respect to the Simpson, Armstrong II, and Linke Deeds associated with the deeds listed in Table 3/Attachments C and D (as well as those representative deeds for Table 2/Attachments A and B that convey easements), the Court finds that the Railroad's easements are not broad enough to encompass trail use under Missouri law. Conversion to a trail thus effected a taking of Plaintiffs' reversionary interest. Finally, the Court recognizes Defendant's concession of liability for the claims listed in Table 4/Attachment E.

**A.      Material Disputes of Fact Preclude Summary Judgment on the Modern Deeds Listed in Table 1.**

Plaintiffs' first ground for summary judgment must be denied because it involves a genuine dispute of material facts.  For claims identified in Table 1, Plaintiffs rely on the claimants' modern deeds, such as quitclaim and warranty deeds to show that they own the entirety of the parcels at issue in fee simple, including land within the Railroad's right of way.  *See* Exs. 23a–23i to Pls.' MSJ, ECF No. 148-32–148-40 (quitclaim, warranty, beneficiary, and sheriff's deeds dated 1971 to 2015).  For example, the sheriff's deed associated with Claims 132 through 135 on the Joint Appendix was executed in 1988 and, according to Plaintiffs, describes the claimant's land as extending to the centerline of the railroad and refers to the rail line as a "right of way."  ECF No. 148-37 at 5.  In contrast, Defendant asserts that the Railroad held the relevant land in fee simple, as evidenced by the source deed executed in 1901 (Henley Deed (14-255)), which conveys a "strip of land" to the Railroad "To Have and to Hold . . . forever" in exchange for valuable consideration ($800).  ECF No. 149-6 at 30.  Plaintiffs argue that the source deeds are insufficient to defeat summary judgment, while Defendant argues that the modern deeds are insufficient to carry Plaintiffs' burden.[8]

As a basic matter, on summary judgment "[t]he moving party bears the initial burden of establishing the absence of any material fact," *Rhutasel v. United States*, 105 Fed. Cl. 220, 225 (2012), and the Court must consider evidence "in the light most favorable to the party opposing the motion, with all doubts resolved in favor of the nonmovant," *Unigene Lab'ys, Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011) (citing *Ortho–McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1360–61 (Fed. Cir. 2008)).  Here, neither party is entitled to summary judgment

---

[8] According to the Joint Appendix, both parties are moving for summary judgment with respect to the Table 1 claims, as the related source deeds all appear on Attachments B and/or D.

on the modern versus source deeds issue because genuine disputes of material fact exist.  *See Mingus*, 812 F.2d at 1391 (holding that on cross-motions a court need not "grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir. 1983))).

Accepting arguendo that each party's deeds purport to establish ownership by that party (or in the case of a few source deeds, a broad easement held by the Railroad), the modern and source deeds—without further clarity on conveyances in the intervening period (if any)—are evidence supporting both parties' respective positions.  Defendant's assertions that Plaintiffs' modern-ownership argument is "entirely speculative" and that the modern deeds are not evidence of *anything* are inapposite.  ECF No. 153 at 8.  For example, the sheriff's deed for Claims 132 through 135 appears to extend to the centerline of the railroad and refers to the rail line as a "right of way" (potentially suggesting an easement), postdates the Henley Deed by nearly a century (allowing at least for the possibility of a subsequent conveyance or modification of the interest), and Defendant has not challenged (nor does the Court have reason to question) the sheriff's deed's authenticity.  *E.g.*, ECF No. 148-37 at 5.   Absent more facts in Defendant's favor, the Court finds that, considered in the light most favorable to Plaintiffs, the source deeds are insufficient evidence for a reasonable factfinder to conclude that the Railroad interest in these parcels did not change over time.

Plaintiffs' arguments for summary judgment are likewise lacking.  Plaintiffs argue that the modern deeds on their face indicate ownership and that Defendant therefore bears the burden of rebutting the presumption in Missouri law that "the person holding title pursuant to a recorded deed to real property is presumed to be its owner."  ECF No. 148 at 42 (quoting *In re Wright*, 611 B.R. at 322).   But Plaintiffs improperly conflate bankruptcy and quiet-title proceedings with

takings actions, where "[t]he burden rests on plaintiffs to prove that they owned a valid property interest in the easement at issue at the time of the taking." *Thomas v. United States*, 106 Fed. Cl. 467, 478 (2012) (citing *Rhutasel*, 105 Fed. Cl. at 226–27); *see, e.g.*, *McClurg Fam. Farm, LLC v. United States*, 115 Fed. Cl. 1, 17 (2014) (collecting cases).  The Court does not agree that applying the appropriate burden here would be tantamount to a "rewriting of [the claimant's] deed."  ECF No. 161 at 11:17–18.  The Court of Federal Claims has heard countless rails-to-trails claims from landowners; the fact that this court evaluates their property interests as part of the takings analysis is simply not as unusual as Plaintiffs assert.

Further, as Defendant points out, Plaintiffs' deeds are not conclusive evidence of the claimants' (or Railroad's) interest in the land.  A quitclaim deed, for example, conveys only what the grantor possesses, which may be nothing.  *See, e.g.*, *R & R Land Dev.*, 389 S.W.3d at 242 ("[A] quitclaim deed does not import that the grantor has any interest at all." (quoting *Webster Oil Co., Inc. v. McLean Hotels, Inc.*, 878 S.W.2d 892, 894 (Mo. Ct. App. 1994))).  A warranty deed similarly conveys only what the grantor possesses, with the added guarantee that the grantor will defend a quiet-title action on the grantee's behalf and/or compensate the grantee upon eviction by someone with greater title.  *See Warranty*, BLACK'S LAW DICTIONARY (11th ed. 2019).  The Court finds no material difference with respect to beneficiary deeds or sheriff's deeds, nor do Plaintiffs assert that any of these deeds perfect title held by the grantee.  As Defendant noted at oral argument, the modern quitclaim and warranty deeds indicate only what the modern grantor *thinks* he owns.  *See* ECF No. 161 at 76:17–20.  Absent further evidence supporting the Table 1 claimants' property interests and viewing the deeds in the light most favorable to Defendant, a reasonable factfinder could find the modern deeds are insufficient to establish that the claimants own the relevant land or that the Railroad held only a narrow easement.

In sum, the Court concludes that the parties' conflicting evidence presents a disputed question of fact requiring further factual development of the record.  Accordingly, the Court denies summary judgment on the modern versus source deed issue but notes that other rulings related to some source deeds associated with claims listed in Table 1 likely obviate further litigation on liability as to those deeds.[9]

### B.      Most But Not All of the Deeds at Issue in Table 2 and Attachments A and B Convey to the Railroad Merely an Easement.

Both parties are entitled to summary judgment in part on the claims raised in Table 2 and Attachments A and B.  For these claims, the parties dispute under Step 1 of the *Preseault II* analysis whether the Railroad acquired fee simple title or only an easement in the relevant parcels.  As explained above, to determine the nature of a conveyance to a railroad, Missouri courts look to the consideration stated, whether the deed refers to a "right of way," and whether any language limits use of the land to railroad purposes.  *Danny Moore*, 991 S.W.2d at 685–86.  The Court analyzes the representative deeds according to shared legal issues, as follows.

### 1.      "One Dollar and the Building, Maintaining, and Operating of a Railroad" is Not Valuable Consideration Under Missouri Law.

The parties dispute what constitutes valuable consideration necessary for the Railroad to have acquired fee simple title.  As relevant to this issue, Plaintiffs identify the Armstrong I, Hoerath, and Greene Deeds as representative of claims listed in Tables 2 and 2a, while Defendant identifies the Fitzgerald Deed as representative of claims listed in Attachments A and B.  ECF No. 162 at 2–3.  All these deeds state consideration of one dollar and the building, maintaining, and

---

[9] Specifically, as discussed below with respect to Attachment B and D claims, the Court finds that deeds representative of the Schweer (54-69), Letchworth (53-433), Roedder (53-414), Wahl (53-69), New England Securities Co. (56-56), New England Securities Co. (56-336), Tietjen (86-33), and Brandt (86-76) Deeds resulted in the Railroad receiving only a narrow easement limited to railroad purposes. *See infra* §§ III.B–C.

operating of a railroad; and the Armstrong I, Greene, and Fitzgerald Deeds internally refer to the conveyance of the relevant land as passing fee simple title to the Railroad.  ECF No. 162-2 at 2–3, 8–9, 10–11, 16; ECF No. 162-3 at 3.  The Court agrees with Plaintiffs that these deeds do not state valuable consideration under Missouri law.

It is well established that one dollar constitutes nominal consideration in Missouri.  *See Danny Moore*, 991 S.W.2d at 687 (citing *Brown*, 152 S.W.2d at 654, and *G.M. Morris*, 631 S.W.2d at 87).  It is also well established that Missouri courts regard non-monetary consideration, such as "[t]he benefits accruing to property owners from the location of public buildings, military headquarters, or manufacturing plants or other private buildings," to "constitute a valuable consideration for their contracts with reference thereto."  *Bagby*, 171 S.W.2d at 676 (quoting 17 C.J.S. *Contracts* § 84) (internal quotations omitted) (finding valuable consideration where land was conveyed on the condition that the railroad build its car and coach shops there); *see*, *e.g.*, *Bayless v. Gonz*, 684 S.W.2d 512, 513 (Mo. Ct. App. 1984) (citing *Bagby*, 171 S.W.2d at 676) (finding "five dollars and the location of a [railroad] depot" constituted valuable consideration).

As Plaintiffs argue, however, there is no Missouri case law holding the same for "the building, maintaining, and operating of a railroad."  Indeed, the only Missouri decision cited by the parties that directly addresses the language at issue here is *Danny Moore*, in which the Missouri Court of Appeals found that a deed stating consideration of "one dollar and the building[,] maintaining[,] and operating of a railroad by the [railroad], its successors and assigns" amounted to "merely nominal" consideration.[10]  991 S.W.2d at 687.  This holding makes sense.  Missouri

---

[10] The deed in *Danny Moore* further restricted use of the land to railroad purposes, providing an additional and independent ground for finding only an easement conveyed.  991 S.W.2d at 687 ("For *both* of these reasons, only an easement was granted." (emphasis added)).  As *Danny Moore* recognized, nominal consideration "standing alone may be sufficient to invalidate a deed."  *Id.* at 686 (quoting *Baurichter*, 729 S.W.2d at 480).

law specifically recognizes that a landowner can convey a voluntary grant of land to a railroad "to aid in the construction, maintenance and accommodation of its railroads."  Mo. Rev. Stat. § 388.210(2).  That the parties clearly shared an intent that the Railroad use the land to build, maintain, and operate (*i.e.*, construct, maintain, and accommodate) the rail line is what, in part, makes it an easement by operation of law.

*Bagby*, on the other hand, is not on point.  The conveyance at issue there was part of an arrangement between a city in Missouri and a railroad company.  The city enticed the railroad to locate its car and coach shops in its town by subsidizing the building of railway company shops with $100,000.  *Bagby*, 171 S.W.2d at 674.  In *Bagby*, there were clear, tangible benefits attached to the conveyance, namely employment opportunities for local citizens resulting from building and operating permanent facilities on the land, something which has long been recognized as valuable consideration.  *See id.* at 676 (citing *Stanley v. Schwalby*, 162 U.S. 255 (1896)); *Stanley*, 162 U.S. at 276 ("The advantage inuring to the city of San Antonio from the establishment of the military headquarters there was clearly a valuable consideration for the deed of the city to the United States.").  While the community benefits in *Bagby* are apparent, it is less obvious what tangible benefits are conferred upon an individual landowner, as were the grantors in these deeds, by a railroad right of way running across his/her land that would otherwise render § 388.210(2) inapplicable, nor does Defendant make such a showing.  And although the Missouri Court of Appeals in *Bayless* extended *Bagby* in holding that the "location of a depot" stated valuable consideration (in addition to five dollars) in a conveyance between individual landowners and a railroad, *see* 684 S.W.2d at 513, nothing in *Bayless* warrants the further extension of *Bagby* to the non-monetary consideration at issue here.

Considering the Missouri Court of Appeals' decision in *Danny Moore* involving identical consideration and the absence of any conflicting, on-point Missouri case law, the Court concludes

that "one dollar and the building, maintaining, and operating of a railroad" does not constitute valuable consideration. The *Armstrong I*, *Hoerath*, *Greene*, and *Fitzgerald* deeds were thus voluntary grants that convey only an easement. *See Danny Moore*, 991 S.W.2d at 685; *G.M. Morris*, 631 S.W.2d at 88. Based on the Joint Appendix, the Court understands similar disputed deeds to be the Cole (30-499), Gale (30-503), Schroeder (30-510), Behrens (86-25), and New England Securities Co. (56-336), and New England Securities Co. (56-56) Deeds.

2.   <u>Reference to the Land Conveyed as a "Right of Way" Results in the Conveyance of an Easement Under Missouri Law.</u>

The parties also dispute the significance of the term "right of way" and other deed language relevant to determining whether the Railroad acquired fee simple title. Plaintiffs identify the Dittman I & II and Whitlock Deeds as representative of the overlapping claims in Table 2a and Attachment B. ECF No. 162 at 2. Defendant asserts that any references to the Railroad's route are merely descriptive of its location and do not automatically render the conveyance an easement. ECF No. 149 at 32; ECF No. 161 at 59:13–60:3. In contrast, Plaintiffs argue that where "right of way" appears in a deed, courts in Missouri will find an easement, not a fee, is conveyed. ECF No. 152 at 29–30.

As above, Plaintiffs have the stronger argument. The deeds here contain many hallmarks of a fee simple conveyance. The Whitlock Deed, for instance, states valuable consideration ($135) and contains fee-indicative granting and habendum language such as "grant, bargain, and sell" and "To Have and to Hold." ECF No. 162-2 at 27; *see id.* at 21, 24 (same for Dittman I & II Deeds). However, such language is not sufficient to pass an ownership interest to a railroad if the conveyance was "limited to right of way or for right of way" because, in Missouri, "the estate conveyed [under such a deed] is an easement only." *Schuermann*, 436 S.W.2d at 668–69 (citing *Brown*, 152 S.W.2d at 656); *see Jordan*, 911 S.W.2d at 658.

25

Here, each representative deed contains a primary conveyance of a strip of land 100 feet in width, and a secondary conveyance for a 25-foot-wide strip of land on each side of and running parallel to the land described in the primary conveyance. ECF No. 162-2 at 21, 24, 27. Each of the secondary conveyances is "*for* extra right of way," followed by a description of its location. *Id.* (emphasis added). The antecedent "for" clearly indicates that "right of way" limits the interest acquired in the secondary conveyance, and is not merely a description of the land conveyed or its location. This language is sufficient to show that the deeds' secondary conveyances transferred an easement under Missouri law. *See G.M. Morris*, 631 S.W.2d at 88 (citing *Schuermann*, 436 S.W.2d at 669).

Further, each of the secondary conveyances in the representative deeds are described by reference to the land granted in the primary conveyance, which is also expressly described as a "right of way." ECF No. 162-2 at 21, 24, 27. The secondary conveyance in the Whitlock Deed, for example, is for "a strip of land twenty five (25) feet wide on each side of and adjacent to the *above described right of way*." *Id.* at 27 (emphasis added). It further described the second conveyance as being "for *extra* right of way." *Id.* (emphasis added). The Dittman I & II Deeds contain similar references, as well as an additional reference at the end of the paragraph describing the grant. Specifically, the deeds include releases from certain grantees who "join in this deed for the express purpose of releasing *the strips for right of way* from Deed of Trust to [illegible] deed dated 16th May, 1892[.]" *Id.* at 21 (emphasis added); *see id.* at 24 (Dittman II Deed). Notably, the deeds specifically refer to the primary conveyance as a "right of way" instead of "land described aforesaid," as used in other deeds. *See, e.g.*, ECF No. 149-6 at 24 (Dubbert Deed (14-227)).

As Defendant notes, "right of way" as a term "has been accorded two meanings in railroad parlance—the strip of land upon which the tract is laid—and the legal right to use such strip."

*Schuermann*, 436 S.W.2d at 669 (citing *Joy v. City of St. Louis*, 138 U.S. 1, 44 (1891)); *see* ECF No. 149 at 32 (citing *Hubbert v. United States*, 58 Fed. Cl. 613, 615–16 (2003)).  The Court finds that these references to the primary conveyance as a "right of way" are descriptive *of the interest conveyed*, not merely as a point of reference for the location of the secondary conveyance, as Defendant asserts.

The Missouri Supreme Court's decision in *Schuermann* is on point.  Like here, the deed in *Schuermann* stated valuable consideration, thus intending to transfer the fee simple title "unless the intention to pass a less estate appears in the deed."  436 S.W.2d at 668.  The term "right of way" was used twice in the description of the land conveyed.  *Id.* at 667.  A certification of the metes and bounds description of the land by the railroad-grantee's engineer also referred to the land as a "right of way."   *See id.* ("I certify that the colored portion of above plat correctly represents the Right-of-way described in deed from St. Louis University to St. Louis Belt and Terminal Railway.").  The court explained that these references to "right of way" amounted to express limitations on the interest conveyed, and cited the purpose and use of the land conveyed as further justification for finding an easement.  *Id.* at 668 (noting the purpose of the acquisition, and only use made of the land, was to construct and operate a rail line; "the grantee railroad constructed no . . . permanent facilities on the land in question which would be inconsistent with ownership of an easement only").  Other Missouri cases have similarly found references to "right of way" or the absence of such references dispositive as to the nature of the conveyance to a railroad.  *Compare Jordan*, 911 S.W.2d at 658 (finding an easement because, in part, "[t]he subject of the conveyance was referred to twice as a *right of way*"), *with Bayless*, 684 S.W.2d at 513 (finding a fee simple conveyance to a railroad where the deed was for valuable consideration, expressed no limitations or reversionary clause, and "did not mention the term 'right-of-way'"),

*and Bockelman*, 403 F.3d at 532 ("Rather than describing the land in question as a 'right of way,' the deed uses the term 'strip of land' to denote the parcel conveyed.").[11]

Although Defendant relies on other decisions of this court to support its contention that the "right of way" references in the representative deeds are merely descriptive, it has not cited (and the Court is unable to find) any cases in which a Missouri court held that a deed to a railroad company containing the phrase "right of way" conveyed fee simple title.  Accordingly, following the weight of Missouri law, the Court likewise finds that the use of the term "right of way" in the Dittman I & II and Whitlock Deeds, especially descriptions of the land as being for right of way, limits the interest conveyed to the Railroad.  *See Schuermann*, 436 S.W.2d at 669.  As in *Schuermann*, the Railroad's subsequent use of the land for right of way further supports the conclusion that the deeds conveyed only an easement.  *Id.* at 668.  Based on the Joint Appendix, the Court understands similar deeds to be the Toelke (53-457), Roller (30-509), Whitlock (53-354), Meyer (27-73), Johnson (25-634), Biermann (25-630), Langenburg (25-561), Logan (16-623), Klebba (22-69), Schriefer (22-67), Herr (22-32), Rutherford (57-153), Fischer (68-423), Fischer (57-60), Fischer (68-425), Spurlock (54-409), Weaver (58-590), Daniels (58-593), Tambke (58-77), Hughes (58-75), Doherty (142-430), Roedder (53-414), Simpson (14-254), Behrens (84-614), Hoecker (18-140), and Harms (86-432) Deeds.

3.  <u>Deeds With Valuable Consideration and Without "Right of Way" Language, Limitations on Land Use, or Reversionary Interests Are Fee Simple Conveyances.</u>

Not all the deeds at issue survive Step 1 of the *Pressault II* analysis, however.  Defendant also identifies the Bournnert Deed (22-437) as representative of claims listed in Attachments A

---

[11] And even if the references to "right of way" are ambiguous as to what interest is conveyed, both Missouri courts and this court have recognized the preference under Missouri law to interpret grants to railroads as easements.  *See Dorothy Moore*, 58 Fed. Cl. at 136; *Miller*, 67 Fed. Cl. at 547 (recognizing "a preference in Missouri law for construing ambiguous instruments to railroads as easements").

and B.  ECF No. 162 at 3.  As to this deed, the Court finds that the Railroad acquired title in fee simple.  The Bournnert Deed states $475 in consideration and employs granting and habendum language indicative of a fee simple.  ECF No. 162-3 at 5 (stating the landowners "grant, bargain, and sell, convey and confirm" to the Railroad and "its successors and assigns" the relevant land "To Have and to Hold . . . forever," including a promise from the grantor to "warrant and forever defend the title").  It contains no reference to a "right of way," nor is there any language limiting the interest received by the Railroad.

Indeed, this conveyance appears to resemble the deed considered by the Missouri Court of Appeals in *Bayless*, which included similar language of a fee simple warranty deed and stated valuable consideration.  684 S.W.2d at 513.  Like here, the *Bayless* deed did not express a limitation on the use of the property conveyed, nor did it mention the term "right of way."  *Id.* Accordingly, the court deemed it a conveyance in fee simple.  *See id.*; *see also, e.g.*, *Powell v. St. Louis Cnty.*, 446 S.W.2d 819, 822 (Mo. 1969) ("The absence of any reference in the deed here involved to the interest conveyed as right of way distinguishes such deed from that involved in *Schuermann*."); *Miller*, 67 Fed. Cl. at 547–48.

Because the Bournnert Deed states valuable consideration, expresses no limitations on the interest conveyed to the Railroad or its use of the relevant land, contains no reversionary clause, and does not mention the term "right of way," it is likewise a fee simple conveyance.  Based on the Joint Appendix, the Court understands similar deeds to be the Bierman (53-444), Scheer (30-514), Wortmann (27-56), Henneke (27-82), Pope (25-593), Falter (16-637), Rodgers (16-622), Pointer (22-6), Huerner (25-575), Welschmeyer (16-640), Dubbert (22-554), Dubbert (14-227), Haynes (14-304), DeMott (14-401), Popejoy (14-297), Popejoy (14-298), Harvey (14-287), Evans (14-300), Risse (14-226), Henley (14-255), Shelton (1-6), Spalding (25-223), Fischer (57-37), Fischer (56-545), Fischer (57-28), McDow (54-353), Price (55-427), Hudson (71-42), Dunstan

(54-396), Balke (86-161), Ficken (86-165), Huse (86-183), Klintworth (86-169), Knoop (86-216), Sitterman (53-303), Temmes (58-304), Hoerath (53-297), Franke (16-636), Bauman (14-205), Elliot (54-388), Price (54-407), Fry (57-51), and Wieneke (54-414) Deeds.[12]

\*      \*      \*

Consequently, under Step 1 of the *Preseault II* analysis, the Court grants summary judgment in favor of Plaintiffs and denies summary judgment for Defendant as to the Armstrong I, Hoerath, Hoecker, Greene, Fitzgerald, Dittman I & II, and Whitlock Deeds, which either constitute voluntary grants for nominal consideration or contain references to the land conveyed as a "right of way" resulting in the Railroad acquiring only an easement.  The Court grants summary judgment in favor of Defendant and denies summary judgment for Plaintiffs as to the Bournnert Deed, which conveys fee simple title to the Railroad.

### C.     The Railroad's Easements as Related to Claims in Table 3 and Attachments C and D are Not Broad Enough to Encompass Trail Use Under Missouri Law.

Plaintiffs are entitled to summary judgment under Step 2 of the *Preseault II* analysis, which addresses the scope of the easements acquired by the Railroad and, specifically, whether they can be construed to include recreational trail use.  Plaintiffs identify the Armstrong II and Simpson Deeds as representative of claims listed in Table 3, while Defendant identifies the Linke Deed as

---

[12] Defendant alleges the following source deeds also state valuable consideration and thus convey fee simple title: Booth (53-609), Fischer (53-349), Linnenbrink (22-85), Scheer (53-338), Smith (25-626), Gans (27-18), Finke (22-25), Bailey (AWOL), Weaver (57-58), and Thompkins (54-357).  However, there is no copy of these source deeds in the record before the Court, apparently because the deeds are missing from the county records.  *See, e.g.*, Attach. A to Def.'s MSJ at 6 n.B, ECF No. 149-1.  Valuable consideration is one factor considered by Missouri courts in determining the nature of a conveyance, but it is not alone dispositive.  *See Schuermann*, 436 S.W.2d at 668.  Without more evidence regarding the language of the deed, and specifically if it is for right of way only or limits use to railroad purposes, the Court finds that Defendant has not met its burden on summary judgment for these deeds.

representative of claims listed in Attachments C and D.  ECF No. 162 at 3–4.  By virtue of surviving Step 1 of the *Preseault II* analysis, the Court also considers the Armstrong I, Hoerath, Hoecker, Greene, Fitzgerald, Dittman I & II, and Whitlock Deeds as part of its analysis for this step.

As explained above, by operation of MO. REV. STAT. § 388.210(2), a railroad acquires only an easement where a deed of land states nominal consideration, even if the conveyance purports to be one for fee simple title.  *See supra* § II.C; *Danny Moore*, 991 S.W.2d at 685–86.  Each of the parties' representative deeds for Table 3 and Attachments C and D employ language indicative of a fee simple conveyance, but state only one dollar in consideration, thus implicating § 388.210(2).  Plaintiffs argue (and the Court agrees) that § 388.210(2) and related Missouri case law compel the conclusion that the scope of such easements is necessarily limited to "railroad purposes," which is not broad enough to encompass nature trail use.[13]  *See* ECF No. 152 at 31–33.

Defendant emphasizes that there is no case expressing a presumption under Missouri law that the Railroad's easements are limited to railroad purposes.  ECF No. 149 at 33–35.  According to Defendant, Missouri courts hesitate to impose restrictions on an easement unless there is express language limiting the scope of the easement granted.  *Id.* at 23 (citing *Powell*, 446 S.W.2d at 822, and *Copanas v. Loehr*, 876 S.W.2d 691, 696 (Mo. Ct. App. 1994)).  Defendant urges the Court to look to the relevant conveyances, which it contends impose no limitations and include fee simple language, indicating the parties' intent that the Railroad receive an interest amounting to a broad easement.  *Id.* at 36–38 (citing *Burnett*, 139 Fed. Cl. at 812, and *Behrens*, 154 Fed. Cl. at 233).

---

[13] Defendant "does not dispute that 'recreational trail use is not within the scope of an easement for railroad purposes.'"  ECF No. 149 at 34.  The Missouri Court of Appeals, as well as this court (following Missouri law), has held the same.  *See Boyles v. Mo. Friends of Wabash Trace Nature Trail, Inc.*, 981 S.W.2d 644, 649–50 (Mo. Ct. App. 1998); *Glosemeyer v. United States*, 45 Fed. Cl. 771, 779 (2000).

Missouri law provides for special treatment of land conveyances to railroads that restrict the use of the land to railroad purposes.  As directly relevant here, § 388.210(2) provides that a railroad may "take and hold such voluntary grants of real estate and other property as shall be made to it *to aid in the construction, maintenance and accommodation of its railroads*;" but specifically states that "the real estate received by voluntary grant shall be held and used *for the purpose of such grant only*."  MO. REV. STAT. § 388.210(2) (emphasis added).  The Missouri Supreme Court has long interpreted this provision as limiting the railroad's interest in the land conveyed to a "mere easement" for railroad purposes.  *Brown*, 152 S.W.2d at 652.  As *Brown* explained, "[t]he statute makes no distinction according to the exact railroad purpose for which the land is to be used but in effect requires only that the land be used for railroad purposes."  *Id.* at 654; *see id.* at 653 (holding that "this provision includes all railroad purposes," in contrast to Missouri's constitutional provision on condemnation which applies narrowly to land used for railroad tracks).  The Missouri Supreme Court's interpretation is amply supported by the plain text of the statute.  The first clause of § 388.210(2) elucidates the purpose of the voluntary grant— namely, "to aid in the construction, maintenance and accommodation of [the grantee's] railroads." The second clause limits the railroad's use to that purpose.  While at least one Missouri court has recognized that the parties to such grant could include language in the conveyance further limiting use only to certain specific railroad purposes, *see Rombauer v. St. Louis-S.F. Ry. Co.*, 34 S.W.2d 155, 157 (Mo. Ct. App. 1931), Defendant has not identified any Missouri case in which the court interpreted a conveyance as granting a railroad a more expansive use of the land beyond the statutorily defined limits.

To the contrary, Missouri courts have time and again reaffirmed that, where a railroad takes only an easement and not title in fee simple, "[s]uch easement is extinguished when the railroad ceases to run trains over the land . . . and, upon that occurrence, the use of the land is again in the

original owner or his grantees, free of the burden of the easement." *Scheuermann*, 436 S.W.2d at 668 (citations omitted); *see, e.g.*, *Baurichter*, 729 S.W.2d at 481; *Jordan*, 911 S.W.2d at 659; *Boyles v. Mo. Friends of Wabash Trace Nature Trail, Inc.*, 981 S.W.2d 644, 648 (Mo. Ct. App. 1998); *see also Rombauer*, 34 S.W.2d at 156 (citing *City of Sturgeon v. Wabash Ry. Co.*, 17 S.W.2d 616 (Mo. Ct. App. 1929)) ("Broadly speaking, it may be said that a railroad company's right of way is held for use for railroad operating purposes, or purposes incidental thereto[.]"); *Glosemeyer v. United States*, 45 Fed. Cl. 771, 778 (2000) (applying Missouri law).

Indeed, a contrary conclusion would be at odds with the public policy concerns that motivated the enactment of what is now § 388.210(2). As explained by the Missouri Supreme Court,

> [A]t the time of the passage of the bill, railroad corporations were in progress of organization and construction, and that towns, settlements, communities, and individuals desired railroad connections. On occasions, land was offered and deeded to a corporation before the railroad was built, and the corporation later abandoned its purpose, due probably to a lack of finances and forethought, resulting that the corporation acquired the land without fulfilling its promise. Or it may be that the corporation, subsequent to acquiring the fee in land, determined to take another route. The General Assembly, we think, was actuated by these conditions in providing a reverter as to voluntary grants of land to railroads.

*Coates*, 43 S.W.2d at 821. As such, "it is the public policy of [Missouri] that a railroad acquires an easement only in a right of way." *Brown*, 152 S.W.2d at 656. Construing the easements here to extend beyond use for railroad purposes, as Defendant argues, would defeat the purpose of the statute, which was aimed at protecting individual property rights against a railroad corporation that may ultimately "abandon[] its purpose." *Coates*, 43 S.W.2d at 821.

A broad interpretation would also be inconsistent with the notion of an easement. As a basic matter, an easement by its nature is limited to a *specific* purpose (or purposes). *See Easement*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a *specific limited*

*purpose* (such as to cross it for access to a public road)." (emphasis added)); *see also Barfield*, 852 F.3d at 799. Missouri courts employ a similar definition, describing an easement as "a right to use the land for particular purposes," *St. Charles Cnty. v. Laclede Gas Co.*, 356 S.W.3d 137, 139 (Mo. 2011) (quoting *Blackburn v. Habitat Dev. Co.*, 57 S.W.3d 378, 389 (Mo. Ct. App. 2001)), "not the complete ownership of land with the right to use it for all lawful purposes perpetually and throughout its entire extent," *Farmers Drainage Dist. of Ray Cnty. v. Sinclair Refin. Co.*, 255 S.W.2d 745, 748 (Mo. 1953) (citing *Magnolia Petroleum Co. v. Thompson*, 106 F.2d 217, 221 (8th Cir. 1939)). The broad easement proposed by Defendant, encompassing both railroad purposes and nature trail use (and perhaps additional, indeterminate uses), cannot be reconciled with the limited nature of an easement under Missouri law.[14] And as Defendant concedes, a nature trail is distinct from and involves different burdens than does a railroad. *See Glosemeyer*, 45 Fed. Cl. at 779 ("Recreational hiking, jogging and cycling are not connected with railroad use in any meaningful way.").

Defendant suggests that the lack of any limiting language in the deeds—whether it be for railroad purposes, trail use, or railbanking—supports the conclusion that the easements are broad enough to encompass any such use. ECF No. 149 at 38. Under this theory, the easements at issue would not have *any* particular limitations, and counsel for Defendant was unable to define any specific limits to the easements (as Defendant construes them) at oral argument. ECF No. 161 at 100:25–103:20. But even if the deeds did not expressly specify a purpose, Defendant's argument

---

[14] This is not to say that a broad easement that encompasses both railroad and nature trail use is impossible. Indeed, Step 2 of *Preseault II* contemplates this circumstance. 100 F.3d at 1533. However, such a conveyance is unusual and must include express language to that effect. *See Romanoff Equities, Inc. v. United States*, 815 F.3d 809, 814 (Fed. Cir. 2016) (citing *Missionary Soc'y of the Salesian Congregation v. Evrotas*, 175 N.E. 523 (N.Y. 1931)); *see id.* at 812 (easement explicitly permitted use "'for such other purposes' as the railroad company and its successors and assigns may desire").

is also inconsistent with the analysis used by Missouri courts where a conveyance is silent on an easement's purpose.  Under Missouri law, "[i]n such instances, an easement holder is entitled to 'unlimited reasonable use' of the easement consistent with the purpose, as determined by the trial court, for which the easement was created."  *Kallash Revocable Inter Vivos Tr. v. Fitzsimmons*, 644 S.W.3d 28, 33 (Mo. Ct. App. 2022) (citing *Maasen v. Shaw*, 133 S.W.3d 514, 518–19 (Mo. Ct. App. 2004)).  To determine an easement's purpose, the court can consider extrinsic evidence such as "the circumstances surrounding the creation of that easement."  *Maasen*, 133 S.W.3d at 519 (citing 28A C.J.S. *Easements* § 159).  "In considering the scope of an easement, the court may consider its location, and how it was previously used."  *Id.* (citing *Hoelscher v. Simmerock*, 921 S.W.2d 676, 679 (Mo. Ct. App. 1996)); *see Barfield*, 852 F.3d at 802–03.

Here, the intended purpose of the conveyance was clearly to build and operate a railroad. On a basic level, the plain text of the Simpson, Armstrong II, and Linke Deeds (as well as the Armstrong I, Hoerath, Hoecker, Greene, Fitzgerald, Dittman I & II, and Whitlock Deeds analyzed in Step 1) confirms as much: the conveyances were made from individual landowners to the St. Louis, Kansas City, and Colorado Railroad Company in the form of long, linear strips of land. *See, e.g.*, ECF No. 162-2 at 2.  The strips of land were described as 100 feet in width and by reference to the center line of the railroad as it was to be located.  *See, e.g.*, *id.*; *see Hartman*, 672 S.W.2d at 365.  Some deeds also permitted the Railroad to encroach on adjoining lands "for the purpose of completing its cuts or fills," "for any purpose of drainage or change of channel during construction," and for so long as the Railroad "may wish to maintain and operate its said Railroad."[15]  ECF No. 162-2 at 2.  The Linke Deed, among others, further conveys to the Railroad

---

[15] Notably, the descriptions of the land conveyed are consistent with the Missouri statutory provision authorizing a railroad "[t]o lay out its road."  MO. REV. STAT. § 1035 (current version at MO. REV. STAT. § 388.210(3)) (providing that a railroad has the power to lay its road "not exceeding one hundred feet in width, and to construct the same; and, for the purpose of cuttings

a "right of entry . . . for purposes of construction of said railroad with free and undisturbed ingress and egress to said railroad."  ECF No. 162-3 at 4.  The Railroad then used the land conveyed to operate a railroad for several decades.  *See supra* § I.A.2.  Once the Railroad ceased running trains over the land and, in many places, pulled up its tracks, the Railroad stopped using the easements altogether.  This has been the case for several decades, and there is no evidence that the Railroad used or planned to use any of these easements for any alternative purpose.  *Id.*  Given these facts and recognizing that easements by standard definition are limited to certain, particular purposes, the Court concludes that the scope of these easements, and thus any "unlimited reasonable use" of such easements, is necessarily limited to railroad purposes.

This conclusion respectfully departs from two other decisions of this court that analyzed the same issue under Missouri law.  *See Burnett*, 139 Fed. Cl. 797; *Behrens*, 154 Fed. Cl. 227.  In both cases (and as Defendant argues here), the court looked to the parties' intent to guide its interpretation of the scope of the easements acquired by the railroad via voluntary grant.  And in both cases, the court held that the intent of the parties to convey the fee simple title in the relevant land, as evidenced by language such as "grant, bargain, and sell," supported the conclusion that they intended to convey broad easements.  *See Burnett*, 139 Fed. Cl. at 812; *Behrens*, 154 Fed. Cl. at 233.  To be sure, the cardinal rule for deed interpretation in Missouri "is to ascertain the intention of the parties and to give that intention effect."  *Hinshaw v. M-C-M Props., LLC*, 450 S.W.3d 823, 827 (Mo. Ct. App. 2014) (citing *Dean Mach. Co. v. Union Bank*, 106 S.W.3d 510, 520 (Mo. Ct. App. 2003)); *see also Copanas*, 876 S.W.2d at 696.  In this Court's opinion, however, where the scope-of-easement question involves the unique circumstances of a voluntary grant to a railroad

---

and embankments, to take as much more land as may be necessary for proper construction and security of the road").  This provision immediately follows the voluntary grant provision at issue here.

that by operation of law is limited to an easement, the object of the intent analysis should be the purpose for which the land was conveyed, not the type of conveyance that was intended.

This is because the Missouri legislature identified a fee simple conveyance to a railroad for nominal consideration as problematic, and it specifically passed a law to contravene the parties' intent by altering the product of such conveyances. *Brown*, 152 S.W.2d at 654 (holding that the Missouri legislature "intended positively to interfere in the dealings of a railroad company with the landowners . . . to protect the latter"). Indeed, "[i]t is well settled in [Missouri] that the rule to be observed in the construction of deeds is to ascertain the intention of the grantor, and to give effect to such intention, *unless it conflicts with some positive rule of law*." *St. Louis Union Tr. Co. v. Clarke*, 178 S.W.2d 359, 363 (Mo. 1944) (emphasis added). Here, that positive rule of law is § 388.210(2), and the Court must read the deeds "with the limitations and conditions which the law puts into it." *Brown*, 152 S.W.2d at 653 (citing 2 Elliott Railroads, § 1153). It cannot override the policy choices of the Missouri legislature by construing the conveyances at issue as broad easements allowing indefinite trail use where Missouri law specifically provides for reversion to landowners when the railroad ceases to run trains over the land.

\*      \*      \*

Accordingly, under Step 2 of the *Preseault II* analysis, the Court grants summary judgment in favor of Plaintiffs as to the Simpson and Armstrong II Deeds. The Court denies summary judgment to Defendant as to those deeds, as well as the Linke Deed.[16] This ruling also applies to the source deeds identified in the Joint Appendix as being associated with Table 3 and/or Attachments C and D, as well as the deeds that the Court determined under Step 1 convey only an easement.

---

[16] Because the easements at issue are not broad enough to encompass trail use, the Court does not reach the parties' abandonment arguments under Step 3 of the *Preseault II* analysis.

**D.     Defendant Concedes That Plaintiffs are Entitled to Summary Judgment as to Claims Related to Table 4 and Attachment E.**

Plaintiffs are entitled to summary judgment on claims for which Defendant concedes liability.  In its opening brief, Plaintiffs moved for summary judgment on claims listed in Table 4, arguing that there is no dispute that the Railroad held merely an easement for railroad purposes as to these claims.  ECF No. 148 at 35–36.  Defendant initially contended that the Table 4 claims (which are cross listed in Attachment E) were not ripe given the contingent interim trail use agreement between MCRR and MDNR.  ECF No. 149 at 39–43.

Following full briefing of the parties' cross-motions, Plaintiffs notified the Court that MCRR and MDNR filed a notice with the STB indicating MDNR had acquired the rail line from MCRR.  ECF No. 155.  Defendant does not oppose supplementing the record with the STB filing and concedes that, given this development, summary judgment for Plaintiffs is appropriate as to deeds and condemnations in Table 4.  ECF No. 156 at 1–2; ECF No. 161 at 53:1–22.  Accordingly, the Court grants summary judgment in favor of Plaintiffs as to the source deeds identified on the Joint Appendix as being associated with Table 4 and/or Attachment E.

Additionally, the Court grants Plaintiffs' Second Motion for Leave to Supplement.  As to Plaintiffs' First Motion for Leave to Supplement, the Court agrees with Defendant that it need not consider the news articles initially submitted as evidence of the MDNR-MCRR trail use agreement in light of MDNR and MCRR's subsequent joint STB filing.  *See* ECF No. 156 at 2.  Plaintiffs' first motion is therefore denied as moot.

**E.     Instructions for Further Proceedings**

While it appreciates the parties' identification of representative deeds and submission of a joint table listing each claim with relevant information, resolution of these motions was significantly complicated by the lack of pre-filing organization.  For future summary judgment

motions, the parties will be required to confer and file a pre-motion joint status report indicating which party seeks summary judgment as to which claims and on what bases. The parties shall further stipulate to representative deeds and tailor the arguments in their briefs accordingly. The parties shall continue to employ the same or similar template used in Exhibit A to the Joint Appendix to prepare any additional claims tables. Motions that do not follow this procedure will be summarily denied.

Finally, the parties shall transcribe any illegible deeds as necessary and/or obtain higher quality copies for the Court's review. If unable to produce a transcription and/or obtain such copy, the parties shall confer in order to identify agreed-upon legal issues presented by the deed(s). *See, e.g.*, *Arnold v. United States*, 137 Fed. Cl. 524, 545 (2018); *Brown v. United States*, 153 Fed. Cl. 318, 322 (2021); *Ingram v. United States*, 105 Fed. Cl. 518, 524 n.13 (2012).

## IV.  CONCLUSION

For these reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 148) is **GRANTED in part** and **DENIED in part**, Defendant's Cross-Motion for Partial Summary Judgment (ECF No. 149) is **GRANTED in part** and **DENIED in part**, Plaintiffs' First Motion for Leave to Supplement (ECF No. 154) is **DENIED AS MOOT**, and Plaintiffs' Second Motion for Leave to Supplement (ECF No. 155) is **GRANTED**. The Court further **ORDERS** that the parties' prior Motion and Cross-Motion for Partial Summary Judgment (ECF Nos. 111, 128) are **DENIED AS MOOT**.

The parties shall file a Joint Status Report by **October 19, 2022**, advising the Court of the issues remaining for resolution in this case and proposing a schedule for further proceedings.

**SO ORDERED**.

Dated: September 28, 2022                          */s/ Kathryn C. Davis*
                                                   KATHRYN C. DAVIS
                                                   Judge